# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT LOUISVILLE

**DONALD RAY LUCAS** *et al.*                                             **PLAINTIFFS**

**v.**                                            **CIVIL ACTION NO. 3:09CV-P38-M**

**DONALD CURRENT** *et al.*                                             **DEFENDANTS**

## MEMORANDUM OPINION

This matter is before the Court on initial review of the *pro se* complaint (DN 1) and amended complaint (DN 18) pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons that follow, a portion of the claims will be dismissed and the others will continue.

## I.

Two Plaintiffs initiated this action under 42 U.S.C. § 1983. Plaintiff Donald Ray Lucas is a convicted inmate currently incarcerated in the Kentucky State Penitentiary (KSP), and Plaintiff Joshna Eidson is a convicted inmate incarcerated at the Kentucky State Reformatory (KSR). They name twenty-two Defendants in the complaint and twenty-five additional Defendants in the amended complaint. Each Defendant is sued in his or her individual and official capacities. Plaintiff Eidson challenges an incident occurring at KSR in October 2008, and Plaintiff Lucas challenges a plethora of incidents at KSR. These claims will be described in greater detail later in the Memorandum Opinion. Plaintiffs seek monetary and punitive damages and injunctive relief.

## II.

When a prisoner initiates a civil action seeking redress from a governmental entity, officer or employee, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1), (2); *McGore*, 114 F.3d at 604.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, -- U.S. -- , 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557).

## III.

### A. *Plaintiff Joshna Eidson*

There are no facts in the complaint or amended complaint pertaining to Plaintiff Eidson. However, one attachment to the complaint describes an incident involving Plaintiff Eidson. It is a KRS Incident Report dated October 19, 2008. Therein, Plaintiff Eidson reports that Defendant Officer Current broke his "religious medellion" and "Thor's Hammer" and that Defendant Officer Current and Defendant Sgt. Decker verbally harassed him. He also claims that he received a false disciplinary writeup and was found guilty, but it is unclear which Defendant, if any, was involved in the disciplinary proceeding.

The Supreme Court has held that where adequate remedies are provided by state law, the negligent or intentional loss or destruction of personal property does not state a claim cognizable under the Due Process Clause of the Fourteenth Amendment. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)). In order to assert a constitutional claim for deprivation of property, a plaintiff must allege that the state post-deprivation procedures are inadequate to remedy the deprivation. *See Parratt*, 451 U.S. at 543-44. The law of this Circuit is in accord. For example, in *Vicory v. Walton*, 721 F.2d 1062 (6th Cir. 1983), the court held that "in § 1983 damage suits claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are

inadequate." *Id.* at 1066. The Sixth Circuit has found that Kentucky's statutory remedy for such losses is adequate within the meaning of *Parratt*. *See Wagner v. Higgins*, 754 F.2d 186, 191-92 (6th Cir. 1985). Thus, Plaintiff Eidson's claim concerning his lost property fails to state a claim upon which relief may be granted and will be dismissed.

Furthermore, verbal abuse and harassment by prison officials fail to state a constitutional violation under § 1983. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987).

Finally, as to Plaintiff Eidson's claim of a false disciplinary proceeding against him, he has not alleged the deprivation of a liberty interest to which procedural due process protections apply. *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Edwards v. Balisok*, 520 U.S. 641 (1997).

All claims brought by Plaintiff Eidson will, therefore, be dismissed.

### B. Plaintiff Donald Ray Lucas

All other claims in the complaint and amended complaint pertain to Plaintiff Lucas only.

Plaintiff Lucas broadly claims that his and other KSR residents' constitutional rights have been violated because they have been harassed by staff at KSR's segregation unit by false allegations, threats of harm, and coverups.

The Court advises that 28 U.S.C. § 1654 "does not permit plaintiffs to appear pro se where interests other than their own are at stake." *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002); *Gonzales v. Wyatt*, 157 F.3d 1016, 1021 (5th Cir. 1998) ("[I]n federal court a party can represent himself or be represented by an attorney, but cannot be represented by a nonlawyer."); *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991) (advising that § 1654 "'does not allow for unlicensed laymen to represent anyone else other than themselves'") (citation omitted). For these reasons, Plaintiff Lucas cannot bring this action on behalf of other KSR residents whose constitutional rights have allegedly been violated.

### 1. *Injunctive relief*

An inmate's claim for injunctive relief regarding the conditions of his confinement becomes moot due to the inmate's release from confinement or transfer to another facility. *See Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998) (holding that a prisoner's claims for injunctive relief became moot after he was transferred to another facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (same). Here, Plaintiff Lucas asks the Court to investigate and possibly stop the harassment by the KSR Defendants, to suspend and remove them from their duties, and to investigate them for possible fraud and other crimes. Plaintiff Lucas, however, is no longer incarcerated at KSR, where Defendants are employed. Thus, it is clear that Plaintiff Lucas would derive no benefit from granting the requested relief, and his claim for injunctive relief must be dismissed.

### 2. *Damages*

#### a. *All claims against the Kentucky Department of Corrections (KDOC) and the official-capacity claims against all other Defendants*

A state, its agencies,[1] and state officials sued in their official capacities for money damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Furthermore, official-capacity claims for damages against state officials and all claims for relief against the KDOC are barred by the Eleventh Amendment to the United States Constitution. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."); *Daleure v. Commonwealth of*

---

[1]The Kentucky Department of Corrections is a department within the Justice and Public Safety Cabinet of the Commonwealth of Kentucky. *See* Exec. Order No. 2004-730 (July 9, 2004); KY. REV. STAT. ANN. § 12.250.

*Kentucky*, 119 F. Supp. 2d 683, 687 (W.D. Ky. 2000) ( "The Eleventh Amendment protects the Kentucky state government and the Kentucky Department of Corrections from suit.").  Thus, all claims for relief against the KDOC and all official-capacity claims for damages against all other Defendants will be dismissed.

### b. Individual-capacity claims

### i. Statement of claims

Plaintiff Lucas, who is currently incarcerated at the Kentucky State Penitentiary, describes several incidents which occurred during his stay at KSR.  First, Plaintiff Lucas claims that in November 2008, he endured two straight days of cell shakedowns and was placed in segregation due to a lie by Defendant Sgt. Gordon.  Plaintiff Lucas was then given a writeup on December 17, 2008, and at court-call, officers lied, and Plaintiff Lucas was not allowed to call his witness.  Plaintiff Lucas was found guilty on a lesser charge.

Second, Plaintiff Lucas claims that on November 28, 2008, he asked Defendant Sgt. Gordon to be moved because he was having problems with Defendant Corrections Officer Serianni and a few other inmates.  Defendant Sgt. Gordon approved.  Plaintiff Lucas alleges that on his way back to Seg 4 Walk, "I was assalted with Unknown Fluids and paper and called all kinds of names this was set up by CO Serianni."  Plaintiff Lucas returned to his cell, and was then moved to Seg 5 Walk "at which time [non-defendant] CO John Doe grab my left arm so tight it was hurting I then ask him to stop he then told sit down and shut the F*** up or I'll slam your ass!"

Third, Plaintiff Lucas contends that Defendant Corrections Officer Beckham "allowed an inmate to assalt him with unknown fluids" but that, along with Defendant Sgt. Blackmon,

Defendant Beckham did nothing about the incident except write Plaintiff Lucas up and "use Illegal methods to cover it up!" Plaintiff Lucas told Defendant Sgt. Blackmon what had happened and was placed on a 15-minute watch, and at shift change, Defendant Sgt. Decker lied and said that Plaintiff Lucas told him he was going to kill himself, all staff and other inmates, so Plaintiff Lucas was then placed in C.P.T.U. at KSR on a 5-minute watch. Plaintiff Lucas claims that they did not want him out of there.

Fourth, Plaintiff Lucas claims that on December 3, 2008, he and another inmate (Peeler) got into "it" and that while Peeler was only moved, Plaintiff Lucas was put on a 15-minute watch, all of his "stuff" was taken, and he was issued a writeup. Defendant Corrections Officer Peck told Defendant Corrections Officer M. Smith what to put in the write up. Plaintiff Lucas reports telling Defendants Lt. Clark, Lt. Wilder, and Cpt. Mauza about the assault, harassment, and lies, and while the officials said that would look into it, they never did.

Fifth, Plaintiff Lucas reports an incident on New Year's Eve (presumably 2008), when Defendant Officer Winburn was intoxicated at KSR. Plaintiff Lucas contends that Defendant Officer Winburn came on shift and started shouting vulgarities and harassing statements at Plaintiff Lucas; Plaintiff Lucas asked Officer Winburn why he was messing with him; and Officer Winburn said, "'If I wasn't so (drunk?) . . . I'd open your cell and beat you to death . . . and kick your teeth out.'" Officer Winburn continued to yell at Plaintiff Lucas until other officers arrived, and Officer Winburn told them that Plaintiff Lucas had been yelling at and threatening him. Defendant Sgt. Tingle then threatened Plaintiff Lucas "with the chair and a holiday ass whoopin."

Sixth, Plaintiff Lucas alleges that Defendant Officers Current and K. Tingle harassed him for almost two months by "shinning lights in my eyes threaten to whopp my ass slam my ass set me up with yellow soap packet." He further alleges that these Defendants "got CO Jeff George to lie on me and got him to shinne lights in my eyes" and had Defendant Sgt. James Tingle to lie and threaten to "whopp my ass." Plaintiff Lucas also alleges that Defendant Officer K. Tingle pushed him and stepped on his feet.

Seventh, Plaintiff Lucas claims that he told staff about the harassment but that nothing was ever done about it. Plaintiff Lucas states that Defendant Warden David Donahue said that he would look into it but never answered any of Plaintiff's letters; Defendant Deputy Warden Paige McGuire said she would get Defendant Unit Administrator Palmer to look into it but nothing was ever done.

Eighth, Plaintiff Lucas claims that Defendant Sgt. Blackmon lied, cursed at him, stopped his mail, and had Defendant Corrections Officer Serianni write Plaintiff Lucas up for being disrespectful but did not admit to calling Plaintiff Lucas names.

Ninth, Plaintiff Lucas claims that Defendant CTO Charlie Brown played with his mail, stopped Plaintiff Lucas from calling his lawyers, and lied to cover up all of the wrongdoing. In a grievance attached to the amended complaint, Plaintiff Lucas claims that on February 6, 2009, he received a letter from the Department of Public Advocacy advising that his "notice of appeal was late on 60.02." In the grievance, Plaintiff Lucas claimed, "this error is caused by mail room. On 12-15-08 I gave 60.02 motions to be mailed out to CTO Charlie Brown. Sent out 12-21-08 came back rejected due to postage needed for 41¢ mail room then remailed it. Came back refused again then mailed a 3rd time which made notice of appeal late for court of appeals."

Tenth, Plaintiff Lucas claims that he was harassed by Defendants Sgt. J. Cole and Correctional Officer Eaton who called him names and issued a writeup against him.

Eleventh, Plaintiff Lucas claims that Defendant Corrections Officer Alice Palmer harassed him every time he asked for legal copies, told lies on him, tried to stop him from doing legal work, threatened to slap him, and allowed legal aides to threaten him. Defendant CO Bolton stopped him from getting copies along with Defendant Lt. Sheila Fluhr who performed "illegal coverups on court call." Plaintiff claims that Defendant Commissioner LaDonna Thompson and Defendant Ombudsman John Dunn never believed his claims of harassment. According to Plaintiff Lucas, Defendant CUAI Bob Atkins stopped grievances because Defendant Warden Donahue said to slow them down, change dates, throw them away, and the new grievance coordinator Defendant G. Dotson stopped his grievances. Plaintiff Lucas asserts that Defendants Dunn and Lt. (Richard) Van Wye claimed that Plaintiff lied in his grievances and threatened grievance aides. He further asserts that Defendant Sgt. Blackmon took his legal work, papers, and legal books and that non-defendant Corrections Officer Becker lied about him and threw his mail away.

Twelfth, Plaintiff Lucas claims that Defendant Corrections Officer Mel Smith lied about him several times and had her brother Defendant Corrections Officer Matt Smith to threaten him. Plaintiff Lucas reports that he was placed in segregation in late February 2009 based on a lie and was on a watch for seven days and released. Four days later, states Plaintiff, someone lied and told Defendant Lt. Fluhr that Plaintiff Lucas was fighting and had been stealing from his cell mate, and Plaintiff was then placed in segregation for 15 days. On April 29, 2009, Plaintiff was again placed in segregation on hearsay by Defendant UA John Hall; after 25 days he was

cleared, and placed in Dorm 6. He reports being harassed non-stop just because "I talk fast and have a loud voice!"

Thirteenth, Plaintiff Lucas reports that on May 29, 2009, he asked Defendant Jimmy Ford to email his case manager and Ford "got loud and nasty to" Plaintiff Lucas and then lied on the phone with Defendant Corrections Officer Eldridge claiming that Plaintiff Lucas would not leave his office. Defendant Lt. Kessinger lied claiming that Plaintiff Lucas cursed him. Defendant Sgt. Deckard lied and said that Plaintiff Lucas tried to assault him; Defendants CO Huff and CO More were present. Defendants Sgt. Cole and CO Chris Eaton have called him all kinds of names.

Fourteenth, on June 4, 2009, Plaintiff Lucas was denied a shower by Defendant CO Lee, who threatened to "stomp my ass and beat me to death." Plaintiff Lucas told Defendant Lt. Grissom and Defendant CTO F. Miller, who said he would tell Defendant John Hall.

Finally, Plaintiff Lucas claims that on June 8 and 9, 2009, he requested to be placed in protective custody a total of three times. He reports initially giving a note to non-defendant CO McCoy to give to non-defendant Sgt. Val. The note stated that Plaintiff Lucas was stress out, that his life was in danger, and that he wanted to be placed on lock down. Sgt. Val said he would talk to Defendant UA II John Hall and had Plaintiff Lucas placed in his cell. At 12:30 am, Defendant Sgt. James Tingle told "the walk I give out info to get staff and inmates in trouble! Which would then start several inmates on seg 5 Right to start calling me ratt's and being harassed all night by staff and inmates." At 8:00 am, Plaintiff Lucas gave a note to Defendant CO Van Wye to give to Defendant Lt. Holkamp. The note stated that Plaintiff Lucas's life was in danger and that he wanted protective custody from all staff and inmates. Defendant Lt.

Holkamp went to Plaintiff Lucas and asked him if he wanted witnesses at the protective custody hearing and a legal aide to which Plaintiff Lucas replied in the affirmative. Defendant Lt. Holkamp said that he would take care of it. At 9:00 am Plaintiff Lucas gave Defendant CO Wan Wye a notice to give to CTO F. Miller. The note stated, "my life is endanger! We need to talk A.S.A.P!" A few minutes later Defendant CO Van Wye opened all Seg 5 Right cell doors even after Plaintiff Lucas said his life was in danger. He claims that Defendant Lt. Holkamp "messed up" in not telling Defendant CO Van Wye. When the cell doors opened another inmate (Yenawine) "said lets get it on Ratt and started attacking me for no reason!" Plaintiff Lucas believes that this was a hit on his life by staff.

### ii. First Amendment

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). "[A] prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury. *Lewis v. Casey*, 518 U.S. 343 (1996), and no actual injury occurs without a showing that such a claim "has been lost or rejected, or that the presentation of such a claim is currently being prevented." *Id.* at 356; *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005) ("Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline."). Moreover, the underlying action must have asserted a non-frivolous claim. The Supreme Court has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must

describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Plaintiff Lucas claims that several KSR officials tried to stop him from doing legal work, prohibited him from getting copies, took his legal work and papers away, stopped/slowed down grievances and threw away his mail presumably in an attempt to deny him access to court. Plaintiff Lucas, however, has not alleged that these actions resulted in any nonfrivolous claim being lost or rejected or that the presentation of any nonfrivolous claim is being prevented. **As to Plaintiff Lucas's claim that the appeal of his Rule 60.02 was untimely, the Court will allow that claim to proceed against Defendant CTO Charlie Brown.**

### iii. Eighth Amendment

"[H]arsh 'conditions of confinement' may constitute cruel and unusual punishment unless such conditions 'are part of the penalty that criminal offenders pay for their offenses against society.'" *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The alleged conduct must reflect an "unnecessary and wanton infliction of pain" to fall within the ambit of conduct proscribed by the Eighth Amendment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

> "After incarceration, only the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment. To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety .... It is *obduracy and wantonness, not inadvertence or error in good faith*, that characterize the conduct prohibited by the Cruel and Unusual Punishments

Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."

*Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991) (quoting *Whitley*, 475 U.S. at 319).

A viable Eighth Amendment claim must satisfy both an objective component and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). The objective component requires that the deprivation be "sufficiently serious." *Wilson*, 501 U.S. at 298; *see also Hudson v. McMillian*, 503 U.S. 1 (1992). This component is contextually driven and is "responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 103). An inmate must show that he was deprived of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347.

The Constitution "does not mandate comfortable prisons," but neither does it permit inhumane ones, and it is now settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners. The Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates."

*Farmer*, 511 U.S. at 832 (citations omitted).

The subjective component requires the defendant to act with "deliberate indifference" to a prisoner's health or safety. *Wilson*, 501 U.S. at 302-03. "'[A]cting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'" *Street*, 102 F.3d at 815 (quoting *Farmer*, 511 U.S. at 836). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate

humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837-38 (citations omitted).

### Miscellaneous conditions of confinement

"Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). Plaintiff Lucas complains that Defendant Officers Current and K. Tingle harassed him for almost two months by "shinning lights in my eyes threaten to whopp my ass slam my ass set me up with yellow soap packet." He also alleges that these Defendants "got CO Jeff George to lie on me and got him to shinne lights in my eyes." Plaintiff Lucas does not claim any injury from the lights, does not indicate what type of lights or how long the lights were in his eyes, and an attachment to the complaint suggests that the lights were used temporarily to take a nightly inmate count.[2] The Court cannot conclude that the shining of the "lights" in Plaintiff Lucas's eyes constituted a deliberate indifference to his health or safety and, therefore, finds that this claim must be dismissed.

Furthermore, although reprehensible and not condoned, verbal abuse, harassment, and threats are insufficient to state a constitutional violation under § 1983. *See Ivey*, 832 F.2d at 955; *see also Miller v. Wertanen*, 109 F. App'x 64, 65 (6th Cir. 2004) (finding guard's threat of sexual assault did not violate plaintiff's constitutional rights); *Clark v. Turner*, No. 96-3265,

---

[2]A Disciplinary Report reveals that on December 25, 2008, while Defendant George was conducting an inmate count, Plaintiff Lucas began cursing and screaming about Defendant George's flashlight. Defendant George had to stop his count to due Plaintiff Lucas's behavior.

1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Searcy v. Gardner*, Civil No. 3:07-0361, 2008 WL 400424, at *4 (M.D. Tenn. Feb. 11, 2008) ("A claim under 42 U.S.C. § 1983 cannot be based on mere threats, abusive language, racial slurs, or verbal harassment by prison officials."); *McGowan v. Cantrell*, No. 1:05-cv-334, 2007 WL 2509704, at *16 (E.D. Tenn. Aug. 30, 2007) ("While defendants' alleged conduct is despicable and to be condemned, it does not violate the Constitution because neither verbal harassment nor threats constitute punishment within the context of the Eighth Amendment."). While a pattern of racial harassment involving racial slurs may violate the Constitution, *see Knop v. Johnson*, 977 F.2d 996 (6th Cir. 1992), Plaintiff Lucas has made no such claim against the KSR Defendants.

Finally, "'[b]ecause placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment Claim.'" *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (quoting *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003)); *Merchant v. Hawk-Sawyer*, 37 F. App'x 143, 145 (6th Cir. 2002) ("Merchant presented no evidence that he was denied basic human needs or was otherwise subjected to cruel and unusual punishment by virtue of the conditions in administrative detention or disciplinary segregation.").

### Failure to protect

"When a prison inmate alleges that prison officials failed to protect him from assault by another inmate, deliberate indifference on the part of the officials to the inmate's risk of injury must be shown." *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992). "Lack of due care for a prisoner's safety by prison officials is insufficient to support a claim of an Eighth Amendment violation." *Id.*

As to Plaintiff Lucas's allegation that he and Inmate Peeler got into "it" on December 3rd,[3] Plaintiff Lucas does not claim that Defendants failed to protect him from this incident or that Defendants knew of and disregarded any risk of danger by Peeler, and Plaintiff Lucas does not allege that he sustained any injury. **The Court will allow Plaintiff Lucas's failure-to-protect claim arising from the June 2009 incident when the segregation cell doors were opened to proceed against the following Defendants in their individual capacities for damages: UA II John Hall, Sgt. James Tingle, CO (Derin) Van Wye, Lt. Holkamp, and CTO F. Miller.**

*Excessive force*

"[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Hudson*, 503 U.S. at 4. In *Wilkins v. Gaddy*, -- U.S. --, 130 S.Ct. 1175 (2010) (per curiam), the Supreme Court reaffirmed the holding of *Hudson* and stated:

> [The *Hudson*] Court rejected the notion that "significant injury" is a threshold requirement for stating an excessive force claim. The "core judicial inquiry," we held, was not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 503 U.S. at 7, 112 S.Ct. 995; *see also Whitley v. Albers*, 475 U.S. 312, 319-321, 106 S.Ct. 1078, 89 L. Ed. 2d 251 (1986). "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Hudson*, 503 U.S. at 9, 112 S.Ct. 995; *see also id.*, at 13-14, 112 S. Ct. 995 (Blackmun, J., concurring in judgment) ("The Court today appropriately puts to rest a seriously misguided view

---

[3]An attachment to the complaint reveals that Plaintiff Lucas was written up on that date and later found guilty for "making death and racial comments towards I/M [] Peeler." Thus, it appears that no physical assault occurred when Plaintiff Lucas and Peeler got into "it."

that pain inflicted by an excessive use of force is actionable under the Eighth Amendment only when coupled with 'significant injury,' *e.g.*, injury that requires medical attention or leaves permanent marks.").

*Wilkins*, 130 S. Ct. at 1178.  "This is not to say that the 'absence of serious injury' is irrelevant to the Eighth Amendment inquiry."  *Id.* (quoting *Hudson*, 503 U.S. at 7.  Rather, "'the extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation.'" *id.* (quoting *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321)) (internal quotation marks omitted), and "may also provide some indication of the amount of force applied."  *Id.*  Of course, not "every malevolent touch by a prison guard gives rise to a federal cause of action," *Hudson*, 503 U.S. at 9, and "*de minimis* uses of physical force" do not support a constitutional claim "provided that the use of force is not a sort 'repugnant to the conscience of mankind.'"  *Id.* at 10 (citations and internal quotation marks omitted).

As to Plaintiff Lucas's allegations that he was assaulted with unknown fluids and paper and the bare allegation that Officer Tingle pushed him and stepped on his feet, the Court concludes that Plaintiff Lucas has alleged nothing more than *de minimis* use of force.  Plaintiff Lucas additionally alleges that CO John Doe grabbed his "left arm so tight it was hurting I then ask him to stop he then told sit down and shut the F*** up or I'll slam your ass!"  Plaintiff Lucas, however, does not name a John Doe as a defendant in either the complaint or amended complaint warranting dismissal of that claim.

### iv. Fourteenth Amendment

#### Disciplinary writeups/proceedings

Plaintiff Lucas claims due process violations surrounding his writeups and disciplinary proceedings. A review of the attached writeups and disciplinary hearing reports reveals that when Plaintiff Lucas was found guilty of violations, he lost privileges, was placed in segregation for short amounts of time (15 to 45 days) and/or lost good-time credits. He has failed to allege any facts demonstrating how his placement in segregation or loss of unspecified privileges "impose[d] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Bruggeman v. Paxton*, 15 F. App'x 202, 205 (6th Cir. 2001) ("Bruggeman's placement in cell isolation and segregated confinement does not rise to the level of an atypical and significant hardship."). Consequently, neither the segregation nor loss of privileges constituted a liberty interest deserving of due process protection.

A restraint which "inevitably affect[s] the duration of [an inmate's] sentence," however, creates a liberty interest. *Sandin*, 515 U.S. at 487. Because the loss of earned good-time credits affects the length of an inmate's prison sentence, Plaintiff Lucas has a protected liberty interest in this regard. *Sandin v. Connor*, 515 U.S. at 477-78 (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)). Even though Plaintiff Lucas's loss of good-time credits constitutes a liberty interest, there is still a barrier to his § 1983 due process claim.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held,

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared

18

invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. . . .

*Id.* at 486-87. If a ruling on a claim would necessarily render a plaintiff's continued confinement invalid, the claim must be dismissed, *not* for lack of exhaustion of state remedies, but because it is simply not cognizable until the challenged confinement has been remedied by some other process. *Id.* at 489; *Preiser v. Rodriguez*, 411 U.S. 475, 488-90 (1973) (concluding that under these circumstances a claim for injunctive relief is only cognizable under the habeas statutes).

In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court extended the application of *Heck* to prison administrative proceedings, such as the one complained of by Plaintiff Lucas in this instance. Specifically, the Court "applied *Heck* in the circumstances of a § 1983 action claiming damages and equitable relief for a procedural defect in a prison's administrative process, where the administrative action taken against the plaintiff could affect credits toward release based on good-time served." *Muhammad v. Close*, 540 U.S. 749, 751 (2004) (discussing *Edwards v. Balisok*). The *Edwards* Court, consistent with *Heck*, held that if the inmate's allegations would "necessarily imply the invalidity of the punishment imposed, [the claim for relief] is not cognizable under § 1983." *Edwards v. Balisok*, 520 U.S. at 648.

Plaintiff Lucas claims that his write-ups were fabricated, that officers lied during the process, and that his request for witnesses was denied. These challenges to the disciplinary process are just such allegations which, if valid, would imply the invalidity of the discipline imposed. *See*, *e.g.*, *Edwards v. Balisok*, 520 U.S. at 648 ("[A]llegations of deceit and bias on the part of the decisionmaker [] necessarily imply the invalidity of the punishment imposed."); *Smith v. Corr. Corp. of Am.*, 5 F. App'x 443 (6th Cir. 2001) (indicating that the prisoner's due process challenges that he was given neither the opportunity to call witness nor adequate notice of the

hearing "imply the invalidity of his punishment because he is suggesting that he was convicted on insufficient evidence and was prevented from presenting exculpatory evidence"). There is nothing in the complaint indicating that the decisions by the disciplinary committees have been invalidated. Thus, Plaintiff Lucas's due process claim with respect to his good-time credits is not cognizable under § 1983.

### Lost property

Plaintiff Lucas reports that after his incident with Inmate Peeler, he lost his "stuff," and he also indicates that at various unspecified times throughout his detention at KSR, his legal and other paper and books were lost or stolen. Like Plaintiff Eidson's claim of destroyed property, Plaintiff Lucas's claim of lost property does not state the claim because Plaintiff Lucas also failed to allege that state remedies for redressing the wrong are inadequate.

### Inadequate grievance process

Plaintiff Lucas complains that grievances are delayed, stopped, and thrown away. An inmate grievance procedure within the prison system is not constitutionally required. *See United States ex rel. Wolfish v. Levi*, 439 F. Supp.114, 163 (S.D.N.Y. 1977), *aff'd sub nom, Wolfish v. Levi*, 573 F.2d 118 (2nd Cir. 1978), *rev'd on other grounds, Bell v. Wolfish,* 441 U.S. 520 (1979); *Spencer v. Moore*, 638 F. Supp. 315 (E.D. Mo. 1986); *O'Bryan v. County of Saganaw*, 437 F. Supp. 582, 601 (E.D. Mich. 1977). If a prison provides a grievance process, violations of its procedures do not rise to the level of a federal constitutional right, *see Martin v. Crall*, No. 3:05 CV P399 H, 2006 WL 515530, at *8 (W.D. Ky. Feb 27, 2006); *Spencer*, 638 F. Supp. at 316; *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982), and a prisoner has no right to an effective grievance procedure. *See Ishaaq v. Compton*, 900 F. Supp. 935, 940-41 (W.D. Tenn.

1995); *Flowers v. Tate*, Nos. 90-3742, 90-3796, 1991 WL 22009 (6th Cir. Feb. 22, 1991). Therefore, Plaintiff Lucas has failed to state a § 1983 claim with respect to the mishandling of the grievance process.

### v. Miscellaneous claims

Plaintiff Lucas claims that Defendant Sgt. Blackmon stopped his mail and that Defendant Charlie Brown stopped him from calling his lawyers. "It is not enough for a complaint . . . to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings." *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986) (dismissing a complaint brought under § 1983). Plaintiff Lucas must "allege 'with particularity' all material facts to be relied upon when asserting that a governmental official has violated a constitutional right." *Terrance v. Northville Reg'l Psychiatric Hosp.,* 286 F.3d 834 (6th Cir. 2002). The Court is not required to accept non-specific factual allegations and inferences or unwarranted legal conclusions. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). The required facts must provide adequate detail to support the claim, such as specific incidents of deprivation of a plaintiff's rights, how each defendant was involved, the names of other persons involved, dates, and places. The specific facts must also explain how the plaintiff himself was personally injured by the challenged conduct or condition, *Cotner v. Hopkins*, 795 F.2d 900, 902 (10th Cir. 1986), and how each defendant is responsible for the alleged injuries. *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985). Because Plaintiff Lucas has failed to give each Defendant fair notice of his claims and the grounds upon which they rest, the Court will dismiss the claims that Defendant Blackmon stopped his mail and that Defendant Brown stopped him from calling his lawyers.

Finally, Plaintiff Lucas claims that he told supervisory staff (including Commissioner Thompson, Warden Donahue, Deputy Warden McGuire, Ombudsman Dunn, Lt. Clark, Lt. Wilder, and Capt. Mauza) about the harassment but that nothing was ever done about it. Defendants mere supervisory positions do not automatically make him liable for the actions of their subordinates. "Respondeat superior[4] is not a proper basis for liability under § 1983." *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006). "Nor can the liability of supervisors be based solely on the right to control employees, or simple awareness of employees' misconduct." *Id.* (internal quotations omitted). "In order for supervisory liability to attach, a plaintiff must prove that the official 'did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on.'" *Loy v. Sexton*, 132 F. App'x 624, 626 (6th Cir. 2005) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). In other words, "liability under § 1983 must be based on active unconstitutional behavior." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999). "A supervisor's awareness of allegations of unconstitutional conduct and failure to act are not a basis for liability." *McCurtis v. Wood*, 76 F. App'x 632, 634 (6th Cir. 2003). Thus, the fact that the supervisory Defendants may have been aware of Plaintiff Lucas's complaints is not enough to subject them to liability under § 1983. *See, e.g., Brown v. Green*, No. 97-1117, 1997 WL 777979, at *2 (6th Cir. Dec. 12, 1997) ("Defendant Green, being sued in her official capacity as the Medical Director of the Michigan Department of Corrections, cannot be held liable for an alleged constitutional violation, because the doctrine of respondeat superior does not apply in § 1983 lawsuits to impute liability onto

---

[4]Respondeat superior is "the doctrine under which liability is imposed upon an employer for the acts of his employees committed in the course and scope of their employment." BALLENTINE'S LAW DICTIONARY (3d ed. 1969).

supervisory personnel."); *Farrow v. West*, 320 F.3d 1235, 1238 n.1 (11th Cir. 2003) (holding that the regional director of prison medical services was not liable for actions of subordinate medical staff).

## IV.

For the reasons set forth more fully above, the following claims brought by Plaintiff Lucas will proceed beyond initial review: Plaintiff Lucas's First Amendment denial-of-access-to-courts claim based on his untimely Rule 60.02 appeal against Defendant CTO Charlie Brown for damages in his individual capacity; and Plaintiff Lucas's Eighth Amendment failure-to-protect claim arising from the June 2009 incident when the segregation cell doors were opened against the following Defendants in their individual capacities for damages: UA II John Hall, Sgt. James Tingle, CO (Derin) Van Wye, Lt. Holkamp, and CTO F. Miller.

All other claims against all other Defendants will be dismissed.

The Court will enter a separate Scheduling Order governing the development of the continuing claims. The Court will also enter a separate Order dismissing all other claims.

Date:

cc:      Plaintiffs, *pro se*
         General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4414.005